Barker, J.
John King was the collector for the village of Olean, for the year 1888, and the other defendants were his sureties on his official bond. A warrant indue form of law was placed in the collector’s hands by the board of trustees with directions to collect the tax extended on the assessment roll which aggregated the sum of $20,964.64. Of this sum he collected and paid over to the treasurer $16,066.88, leaving uncollected or unaccounted for, the sum of $4,878.84, for which amount the verdict was directed. The section of the village charter creating and defining the duties of the collector provides, that the collector shall collect all such taxes and assessments as shall be specified in the rolls delivered to him by the board of trustees with their warrants attached. . . and for that purpose shall possess the powers conferred by law upon town collectors and shall proceed in the same manner to enforce such tax or assessment. He shall pay over to the treasurer as often as may be prescribed in said warrant all moneys collected by him, and at the expiration of such warrant, shall return the same to the board of trustees, with an account, verified by his oath, that the same is correct, of the moneys collected by him, the amount paid to the treasurer and an itemized account of the unpaid taxes and assessments. The board of trustees may in their discretion renew such warrants from time to time, or issue a new warrant for unpaid taxes. Laws of 1882, chap. 110, sec. 16, title 2.
The collector is required to give a bond with sureties conditioned that he will faithfully discharge the duties of his office, and honestly and faithfully account for and pay “ over all moneys received by him by virtue of his office.” The bond executed- and delivered by the defendants was in full compliance with these requirements. At the expiration of the warrant, the collector neglected to return the' same or the assessment roll, to* which it was attached, to the board of trustees, or to render any account of the moneys collected by him, or to make any statements, or render an account of the unpaid taxes. On the trial the defendants sought to excuse this omission of duty on the ground that the assessment roll and warrant were lost or mislaid while in his hands and the collector was unable to produce the same. Their contents, as to the aggregate valuation of the property placed on the assessment roll, the amount of the tax and the items composing the same was proved *171 by the minutes of tbe board of trustees and the testimony of the village officials. In bar of a recovery for the taxes uncollected, the defendants claim that the entire tax was void for the reason, that the aggregate amount of the tax assessed was in excess of the amount which the board of trustees were authorized to levy and assess in any one year, and it was in violation of the restraints placed on their power by the charter. The clauses containing the limitations are found in section one, title seven, and are as follows : “ The board of trustees shall have power to raise by general tax from the taxable inhabitants of said village, and the property liable therein to taxation, such sum of money as they shall deem proper, not to exceed the sum or rate of seven mills for each dollar valuation in any one year, to be expended in the payment of the debts and ordinary expenses of said village, and to carry into effect the several powers and privileges granted by this act. In addition thereto each male inhabitant of the age of twenty-one years and upwards. . . shall be assessed one dollar poll tax. . . This section does not, however apply to any tax or assessment for sidewalks or sewer or drain purposes, or any other tax or assessment for local improvement, or for whieh special provision is made in this act.” By other provisions of the charter, on the vote of the tax-payers at a special meeting called for that purpose, a further sum may be raised by general tax on the property liable to taxation. Sec. 2, title 7.
The assessor’s valuation of the taxable property as contained in their roll was two million, and a tax of seven mills on a dollar would produce the aggregate sum of 114,000, which sum is no greater in amount than the items of indebtedness created for the ordinary and current expenses for the year preceding the levy of the tax. The excess above that sum consisted of two items, one a poll tax of nine hundred dollars, the validity of whieh the defendants do not question, and it was plainly authorized by the provision already quoted. The other item embraced in the levy, amounting to $6,491,73, was an indebtedness against the village created by the board of water commissioners, certified by them to the board of trustees in pursuance of a power conferred upon that board by an act hereinafter referred to.
For the reason that the tax levied is more than seven mills on the dollar of the assessor’s valuation, the defendants insist the entire tax is void. No claim is made that any items of the indebtedness embraced in the levy was invalid and not a subsisting indebtedness against the village. As the collector’s warrant was regular on its face, it was a complete protection to the collector in all regular proceedings taken by him in obedience to its mandate. The board of trustees possessed full power to levy a tax and issue a warrant for its collection, but the facts necessary to confer jurisdiction upon the board it was not necessary to set forth in the warrant. None of the tax *172 payers, bád their property been seized and sold by the collector in payment of a tax, coiild have maintained an action against him, as his process was regular. No contention was made by the defendants against this proposition. The collector having a valid process in his hands which it was his duty to execute, there were but two modes by which he could be released from liability, — First, by paying to the proper officer the gross sum he was required to collect. Second, by returning the warrant, paying over the money collected with an itemized account of the unpaid taxes, duly verified. Nothing less would be a performance of the obligations imposed upon him by the statute. The loss of the assessment roll and warrant was the result of his own negligence and there are many circumstances indicating that he intentionally destroyed both. Bradley v. Ward, 58 N. Y., 401-410; Supervisors v. Bristol, 99 N. Y., 316-322.
We are of the opinion that the tax levied is not in violation of the restraining clause contained in the provision of the charter already cited. In reaching this conclusion, we have not omitted to keep in mind and observe the application of the rule, that municipal corporations have no inherent power of taxation, and to impose a valid tax the action of the municipal authorities must be within the powers and limitations of legislative authorization as found in their charters, or some other law relative to the question. In terms the restraint limiting the tax to seven mills on a dollar of valuation, in any one year, applies to the debts and ordinary expenses of the village, necessary to carry into effect the powers and privileges granted to it by its charter and specifically mentions instances when the limitation will not be applicable. Prior to March, 1888, there had been created and then existed a board of water commissioners for the village of Olean, organized under and in pursuance of chapter 181 of the Laws of 1875. The extent of their operations up to that time is not fully disclosed in the case, but that they had taken active measures to supply the village with water is not disputed and they had created some debts in aid of that purpose. On the 16th of March the tax-payers, at a special meeting held under the supervision of the board of trustees, voted by a large majority to issue bonds in the sum of $80,000 in pursuance of the provisions of said general act authorizing such action. After this, vote had been taken and on the 27th of the same month, the charter was amended giving the board of trustees, among other things, the power to appoint a board of water commissioners and vesting in such board when so appointed the power to issue bonds for water purposes binding upon the village to the amount of 180,000, in pursuance of the vote of the inhabitants of said village of March 16th, 1883, and in terms legalizing such vote.— Chap. 129, Laws of 1883.
The amendment of 1883 permits the creation of a debt *173 against tbe village, and while it does not in terms provide tbe mode and manner of paying off, the principal of such indebtedness, or tbe current interest accruing thereon, we think it is obvious that it was the intention of the legislature to repeal, pro tanto, the limitation so as not to make it applicable to a tax levied to pay the indebtedness which the tax-payers had voted and the legislature sanctioned. The limitation placed on the board of trustees by a provision in the same section is not applicable to a tax levied in pursuance of a special provision of of the charter. The amendment of 1883, is in effect an amendment ofthe charter and provides for a tax specially exempted from the limitation as, Contained in the original charter. When special authority to borrow money for a designated purpose is given to a municipal corporation, it impliedly repeals all existing restraints contained in the charter imposing limitations upon the rate of taxation, if such was the legislative intention. In the case of Commonwealth v. Pittsburg, 34 Pa., 496, it was held where by a special act of the legislature, a city was authorized to create a large debt for a particular purpose, and to borrow money therefor and to make provisions for the payment thereof by the assessment and collection of such taxes as might be necessary therefor, it was, as respects the particular debt thus created, a repeal of all pre-existing restrictions upon the taxing power.
The provision of the general act of 1875, authorizing villages to establish a system of public water-works remains in force and in terms provides that all deficiencies in that department after deducting the water rates shall be paid by a general tax on the property of the village to be assessed, levied and collected in the same manner as the general taxes are levied and collected. The board of water commissioners were authorized to borrow money for the purpose of constructing the works upon a vote of the tax-payers, and not to create a debt or borrow money on the credit of the village without the sanction of a majority of the tax-payers expressed in the manner pointed out by sec. 21 of the general law on the subject. The vote of the tax-payers authorizing the loan may be fairly and reasonably construed as authorizing The board of trustees, to levy a greater tax than seven mills on the dollar, in pursuance of sec. two of title seven which provides : the board of trustees may cause to be raised such further sum or sums in any one year, by general tax, as they require, provided that the consent of a majority of the taxable inhabitants of said village, authorized to vote, and voting at an annual or special meeting called for that purpose, be first obtained.
The circumstance, that a levy of seven mills on the dollar of the assessor’s valuation only produces a sum sufficient to meet the current expense of the village is another reason, and to our *174 minds a convincing one, that it was tbe legislative intention to repeal tbe restraining clause so far as it was necessary to provide for the prompt payment of tbe interest and principal of the loan in the manner and. at the time set forth in the bonds issued to the persons who loaned the money. If that is not so then the creditor is wholly dependent for payment of his debt and interest upon the will of the board of trustees, who may apply all the moneys that they are authorized to raise in any one year by tax to meet other and the current obligations which the board itself has the power to create.
In view of all the provisions of the charter on the subject of taxation, we have reached the conclusion that the tax as levied was in all respects valid. There is no pretense that the tax was imposed for the purpose of liquidating and paying off any unjust claim or demand made against the village. Under such circumstances, the action of the village authorities should be upheld by the court if the same can be done by a fair and reasonable construction of the statutes bearing upon the subject.
After the warrant expired the trustees renewed the same. This they were authorized to do by virtue of a special provision of the charter, and that act did not relieve the sureties from their obligations. The case is the same in legal effect as if the power to renew the warrant had been referred to by a recital in the bond, and specifically assented to by the sureties. People v. Vilas, 36 N. Y., 459-462.
There was some evidence tending to show that the items of indebtedness created by the water commissioners arose prior to March, 1883, and had no connection with the loan made in pursuance of the amendment of the charter and that the validity of the tax is not aided by any construction which may be given to that amendment. If there is any merit in this point it was not raised upon the trial.
At the close of all the proofs, the defendants requested the court to direct a verdict in their favor upon the ground that the ratio of taxation adopted exceeded the ratio provided by statute and for that reason the tax was illegal and void. The plaintiff asked the court to direct a verdict in its favor upon grounds which were stated by counsel. Neither party asked to go to the jury upon any question of fact. Thereupon the court directed a verdict in favor of the plaintiff. The defendants by their request only presented questions of law for the ruling of the court, waving the right to go to the jury upon any disputed question of fact and consenting that the court act as the trier on all questions at issue on which there was a conflict of evidence.
Motion for a new trial denied. Judgment ordered for the plaintiff upon verdict, with costs.
All concur.